FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 23, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OREGON TOOL, INC. f/k/a BLOUNT INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> IRONCRAFT, LLC; and CHRISTOPHER L. HAEFER, and his marital community, <br><br> Defendants. | Case No. 4:23-CV-05110-MKD <br><br> TEMPORARY RESTRAINING ORDER <br><br> AND <br><br> ORDER GRANTING EXPEDITED DISCOVERY <br><br> **ECF Nos. 6, 7** |

Before the Court is Plaintiff Oregon Tool's ("Oregon Tool") Motion for Limited Expedited Discovery, ECF No. 6, and Plaintiff's Emergency Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, ECF No. 7. On August 11, 2023, the Court held a hearing on the pending motions. ECF No. 36. Lance A. Pelletier, Devin Smith, Ryan Kelly, and Jessica G. Mason appeared on behalf of Oregon Tool. Jack M. Lovejoy, Brittany A. Madderra, and Blake Marks-Dias appeared on behalf of

ORDER - 1

1  Defendant IronCraft, LLC ("IronCraft"). Matthew R. Kelly appeared on behalf of
2  Defendant Christopher L. Haefer ("Haefer").
3      Oregon Tool seeks a temporary restraining order to prevent the unlawful use
4  of its trade secrets, and an order granting expedited discovery related to the alleged
5  misuse of its trade secrets. For the reasons stated at the hearing and set forth
6  below, Oregon Tool's motion for a temporary restraining order is **GRANTED IN**
7  **PART**, and its motion for expedited discovery is **GRANTED IN PART.**

8                                   **BACKGROUND**

9      Oregon Tool is a manufacturer of forestry, agriculture, and construction
10 tools and equipment. ECF No. 8 at 2 ¶ 2. Woods Equipment Company ("Woods")
11 is a wholly owned subsidiary of Oregon Tool. ECF No. 8 at 2 ¶ 2. IronCraft is a
12 competitor, although offering "quality at a lower price[,]" with a focus on
13 construction products, as compared to Woods, who offers "a premium product" for
14 "a higher price[,]" with a focus on agriculture products. ECF No. 24 at 5 ¶ 21.
15     Haefer worked for Oregon Tool as a district manager for sales, covering
16 several western states. ECF No. 24 at 2 ¶ 3. At the start of his employment,
17 Haefer signed a Non-Compete Agreement and received a copy of the Oregon Tool
18 handbook. ECF No. 8 at 4 ¶ 8; ECF Nos. 8-1, 8-2.
19     Haefer represents that he began to seek employment elsewhere on May 7,
20 2023. ECF No. 24 at 5 ¶ 17. Haefer represents in his declaration that, on May 18,

ORDER - 2

1  2023, he received a call from an IronCraft employee and became interested in

2  joining IronCraft. ECF No. 24 at 3 ¶ 8. Haefer represents that he decided to join

3  IronCraft on May 21, 2023. ECF No. 24 at 3 ¶ 8. However, Mike Kucharski,

4  IronCraft's director of Digital and Dealer Development, submitted an Offer of

5  Employment form signed by Haefer dated May 12, 2023. ECF No. 26-1.

6       On May 18, 2023, while still working for Oregon Tool, Haefer sent an email

7  to his private email address attaching two excel spreadsheets containing Oregon

8  Tool customer and salesperson information. ECF Nos. 8-5, 8-6; ECF No. 24 at 2

9  ¶¶ 5, 6. The first, "List A," "contains over 1,300 Oregon Tool customer

10  distributors, those customers' recent sales volumes, current price discounts, and

11  other nonpublic and competitively sensitive financial and business information."

12  ECF No. 8 at 7 ¶ 13. The second, "List B," "lists Oregon Tool salespersons, those

13  salespersons' recent financial performance, and other financial data of their

14  assigned customer distributors." ECF No. 8 at 8 ¶ 14.

15       On May 21, 2023, Haefer resigned from Oregon Tool to work for IronCraft,

16  ECF No. 8 at 5 ¶ 10, as indicated in a public announcement dated June 28, 2023,

17  Haefer. ECF No. 8-3. Following Haefer's resignation, Oregon Tool investigated

18  the circumstances surrounding his termination and learned of Haefer's emails to

19  himself. ECF No. 8 at 6-7 ¶ 12. Oregon Tool notes that, following Haefer's

20  resignation, other employees and salespeople have left Oregon Tool to work for

ORDER - 3

1  IronCraft, that one such employee contacted a current Oregon Tool employee
2  asking for a collection of data, and another contacted a current Oregon Tool
3  customer, in a purportedly inappropriate manner.  ECF No. 8 at 8-9 ¶¶ 15-17.
4      On July 28, 2023, Oregon Tool filed a Complaint, and on August 1, 2023,
5  filed its First Amended Complaint.  ECF Nos. 1, 3.  On August 2, 2023, Oregon
6  Tool filed the instant motions seeking a temporary restraining order and expedited
7  discovery.  ECF Nos. 6, 7.

**LEGAL STANDARD**

**A. TRO**

"[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'"  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (quoting *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  To obtain a TRO, "a plaintiff must establish 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *No on E v. Chiu*, 62 F.4th 529, 536 (9th Cir. 2023) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).  The court is to apply a "sliding scale" approach to these factors; a strong showing of one element may offset a weaker showing of another.  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022).  "[W]hen the balance of

ORDER - 4

hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only serious questions going to the merits." *Id.* (quotations omitted).

It is generally the party seeking an injunction's burden to demonstrate that injunctive relief is warranted. *Right to Life of Cent. Cal. v. Bonta*, 562 F. Supp. 3d 947, 955 (E.D. Cal. 2021). The rules of evidence are relaxed in preliminary injunctive proceedings, and a preliminary injunction may only be awarded upon a clear showing of evidence supporting each factor. *Perlot v. Green*, 609 F. Supp. 3d 1106, 1116 (D. Idaho 2022).

**B. Expedited Discovery**

Fed. R. Civ. P. 26(d)(1) provides that a district court may permit expedited discovery prior to a Fed. R. Civ. P. 26(f) conference. "In the Ninth Circuit, courts use the 'good cause' standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012). "Good cause," in this context, may be found whether the need for expedited discovery outweighs the prejudice to the responding party. *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1076 (S.D. Cal. 2019). Factors that district courts consider for the inquiry include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance

of the typical discovery process the request was made." *Id.* (quoting *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009).

## DISCUSSION

**A. TRO**

    1. Likelihood of Success on the Merits

Although Oregon Tool includes eight causes of action in its First Amended Complaint, ECF No. 3, it identifies for the purposes of the instant motion its claims pursuant to the Defend Trade Secrets Act ("DTSA") and Washington Uniform Trade Secrets Act ("UTSA"), breach of contract, breach of the duty of loyalty, and tortious interference. ECF No. 7 at 5. However, Oregon Tool offers no law or argument to support a likelihood of success on its breach of the duty of loyalty or tortious interference claims. *See* ECF No. 7. Therefore, the Court does not consider those claims for the instant analysis and considers only Oregon Tool's DTSA and UTSA claim and breach of contract claim.

        i.    DTSA and UTSA

"The relevant portions of the DTSA and the UTSA are almost identical." *See Bombadier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019) (comparing 18 U.S.C. § 1839(5) and RCW 19.108.010(2)). "A plaintiff asserting a DTSA or UTSA claim must establish that its trade secrets were misappropriated." *Id.*

ORDER - 6

Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information" if

> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). The UTSA similarly requires that a "trade secret" is information subject to reasonable efforts towards secrecy and having economic value. RCW 19.108.010(4). The Ninth Circuit has recognized that "the definition of what may be considered a 'trade secret' is broad." *Intelliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

Oregon Tool describes the files at issue as "a detailed customer list with customer identities, contact information, purchase history, sales volumes, and pricing history for more than 1,300 customers" and "documents showing [Oregon Tool's salespersons and detailed data regarding their sales, performance, contact information, and financial data for their assigned customers[.]" ECF No. 7 at 7. IronCraft, upon Haefer's representations, argues that "Lists A and B do not contain pricing and discount information, nor are they reports on salespeople." ECF No. 19 at 5. IronCraft has not seen the documents. ECF No. 19 at 5.

ORDER - 7

The Court has received and reviewed List A and List B *in camera*. *See* ECF No. 28, 30. The documents appear to contain data related to customer pricing and salesperson performance. Oregon Tool has sufficiently demonstrated a likelihood of success that the materials are trade secrets for the purposes of DTSA and UTSA. *See, e.g.*, *Arthur J. Gallagher & Co. v. Petree*, No. 2:18-cv-03274-JAM-KJN, 2022 WL 1241232, at *6 (E.D. Cal. Apr. 26, 2022) (finding trade secrets in a compilation of customer contacts including pricing information); *Marsh & McLennan Agency, LLC v. Teros Advisors, LLC*, 2021 WL 4133858, at *3 (N.D. Cal. Sept. 10, 2021) (finding trade secrets in exhibits containing names of clients and financial information regarding clients); *Navigant Consulting, Inc. v. Milliman, Inc.*, No. C18-1154JLR, 2018 WL 3751983, at *4 (W.D. Wash. Aug. 8, 2018) ("client information, pricing, strategic business and marking plans, and other information qualify as trade secrets.").

Under the DTSA, "the term "misappropriation" is defined as

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade

ORDER - 8

secret was—

    (I) derived from or through a person who had used improper means to acquire the trade secret;

    (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

    (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that—

    (I) the trade secret was a trade secret; and

    (II) knowledge of the trade secret had been acquired by accident or mistake . . . .

18 U.S.C. § 1839(5). The UTSA uses the same definition. RCW 19.108.010(2). "Improper means includes 'theft, bribery, misrepresentation, [or] breach or inducement of a breach of a duty to maintain secrecy.'" *Bombardier*, 383 F. Supp. 3d at 1178 (quoting 18 U.S.C. § 1839(5); RCW 19.108.010(1)).

    Oregon Tool offers evidence that List A and List B were misappropriated: Emails from Haefer to his personal email address dated May 18, 2023. ECF Nos. 8-5, 8-6. Although Haefer represents that he "became interested in joining IronCraft" on May 18, 2023, ECF No. 24 at 3 ¶ 8, there is other evidence

ORDER - 9

indicating that Haefer accepted an offer of employment with IronCraft, on May 12, 2023, before he emailed List A and List B to himself, ECF No. 26-1.[1]

In sum, there is evidence that IronCraft hired Haefer, and then Haefer emailed himself sensitive Oregon Tool customer and salesperson information to a personal account. The Court finds that Oregon Tool has established a likelihood of success to demonstrate that its trade secrets were misappropriated sufficient to justify minimally intrusive injunctive relief, as is appropriate when applying a sliding scale test for preliminary injunctive relief. *See hiQ Labs, Inc*, 31 F.4th at 1188. These preliminary finding do not foreclose alternative findings at a future preliminary injunction hearing or a trial on the merits.

---

[1] Further, the Declaration of Derek Paulsen, ECF No. 8, details a number of incidents surmounting to circumstantial evidence that List A and List B were used to solicit employees and customers from Oregon Tool, although the accuracy of that evidence is disputed by further declarations from several individuals. ECF Nos. 21, 22, 23, 24, 25, 26. Much of this evidence is strongly contested, and the Court declines to find that Oregon Tool has clearly shown that the acts alleged are the result of misappropriation. *Perlot*, 609 F. Supp. 3d at 1116 ("a preliminary injunction may only be awarded upon a clear showing of evidence").

ORDER - 10

        ii.        Breach of Contract

"Generally, a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage." *Lehrer v. DSHS*, 5 P.3d 722, 727 (Wash. Ct. App. 2000). Oregon Tool has provided a signed "Employee Non-Compete Agreement" between itself and Haefer, dated July 20, 2018. ECF No. 8-2. Oregon Tool argues that Haefer breached clauses promising that he will not "[d]irectly or indirectly solicit, divert, or accept orders for products or services that are substantially competitive with the products or services offered by [Oregon Tool] from any customer of [Oregon Tool,]" and will not "[d]irectly or indirectly induce . . . any person who is employed by [Oregon Tool] to leave the employ of [Oregon Tool.]" ECF No. 8-1 at 13. The only evidence that Oregon Tool presents to show that Haefer breached these clauses is speculation that Oregon Tool's recent loss of employees and customers is the result of his misuse of List A and List B.[2] ECF No. 7 at 8. Haefer, in his declaration, denies soliciting Oregon Tool

---

[2] There is another incident identified in Paulsen's declaration, where Paulsen claims that an Oregon Tool customer told a current Oregon Tool employee that Haefer told the customer that Woods, an Oregon Tool affiliate, was going out of business. ECF No. 8 at 10 ¶ 18. The Court declines to consider the hearsay-upon-hearsay allegation as sufficiently established to warrant a TRO.

ORDER - 11

customers or employees. ECF No. 24 at 7 ¶¶ 23-25. Further, in Washington, enforcement of non-compete clauses is subject to certain conditions of employment. *See* RCW 49.62.020(1)(b). There remain significant legal disputes as to the enforceability of the clauses that Oregon Tool has claimed Haefer breached, and the Court declines to find in its favor upon the limited briefing now before it.

Oregon Tool also argues that Haefer breached a confidentiality obligation, which requires that Haefer keep confidential information confidential. ECF No. 8-1 at 2. Oregon Tool further implies that Haefer violated the terms of the Oregon Tool employee handbook, which guide employee use of computers and devices. ECF No. 7 at 8; ECF No. 8-2. There is a deficit of legal briefing on whether the employee handbook constitutes an enforceable contract and whether Haefer's actions constitute a breach of that contract. The Court declines to find that Oregon Tool is likely to succeed in its breach of contract claim against Haefer.

2. Irreparable Harm

"[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1208 (E.D. Cal. 2020). "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir.

ORDER - 12

2013).  "[T]he threat of being driven out of business is sufficient to establish irreparable harm.  *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985).  However, a district court's injunction may not be "grounded in platitudes rather than evidence" and must address "whether legal remedies, such as money damages, are inadequate in this case."  *Herb Reed Enters.*, 736 F.3d at 1250.  "Under any theory of irreparable harm, the plaintiff must use provide evidence more than conclusory or speculative statements to support its claims."  *Am. Passage Media*, 750 F.2d at 1474.

With its motion, Oregon Tool does not point to any direct evidence of harm it has or will certainly experience.  ECF No. 7 at 9.  Oregon Tool cites an unreported 2003 case for the proposition that "[a]n intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm."  *Pac. Aero & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1198 (E.D. Wash. 2003) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3rd Cir. 1992)).  Even if the Court were to consider the authority binding, Oregon Tool has failed to present evidence of IronCraft or Haefer's intent to continue to use List A or List B for commercial gain.  IronCraft represents that it has not seen List A or List B, ECF No. 27 at 3, and Haefer represents that he forgot he had List A and List B until this lawsuit was filed.  ECF No. 24 at 3 ¶ 8.

ORDER - 13

The Court has found above a sufficient likelihood of success that Haefer sent List A and List B to his personal email address after accepting a position with IronCraft. The Court will fashion relief to address the potential harm that will result but will go no further.

3. Balance of the Equities

Given that IronCraft disclaimed knowledge of List A and List B, ECF No. 27 at 3, and Haefer's representation that he forgot he had List A and List B until this lawsuit was filed, ECF No. 24 at 3 ¶ 8, Defendants will not be harmed by a limited TRO enjoining the use of List A and List B and directing they divest themselves of possession of List A and List B. Oregon Tool's potential future harm from the improper use of its trade secrets, as discussed above, warrants a minimally invasive TRO.[3]

---

[3] Oregon Tool seeks, in addition to this relief, a TRO that "prohibits Defendants from contacting any customer or employee of Oregon Tool identified on the misappropriated confidential materials." ECF No. 7 at 11. At the hearing, counsel for IronCraft explained that IronCraft and Oregon Tool have many customers in common. Oregon Tool's evidentiary showing does not warrant such extreme preliminary relief at this early stage of litigation.

ORDER - 14

4.  Public Interest

"The 'public interest' mostly concerns the injunction's 'impact on non-parties rather than parties.'" *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (quoting *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)).  The public is unaffected by a TRO prohibiting IronCraft's use of List A and List B.

The Court grants in part Oregon Tool's request for a TRO, specifically, Oregon Tool's request for an order enjoining the misuse of Oregon Tool's trade secrets and directing that Defendants divest themselves of possession of Oregon Tool's trade secrets.

**B. Expedited Discovery**

Oregon Tool argues that expedited discovery is needed to learn the extent of Defendants' alleged attempts to divert business and employees away from Oregon Tool, through the use of misappropriate trade secret information and otherwise. ECF No. 6 at 2.  Oregon Tool argues that expedited discovery is necessary to allow it to affirmatively act to mitigate harm to its customer relations and reputation and to prepare for a motion for preliminary injunction.  ECF No. 6 at 2.

As explained above, the evidence on the record is sufficient to establish only that Haefer emailed himself List A and List B after accepting employment with IronCraft.  Given Oregon Tool's evidentiary showing, and in consideration of the forthcoming motion for preliminary injunction, the Court finds good cause to grant

ORDER - 15

the request in part. *See Rovio Entm't*, 907 F. Supp. 2d at 1099. The Court will limit expedited discovery into whether List A and List B have been shared and/or misused.

As directed at the hearing, the parties are expected to confer as to the language of expedited discovery requests. The scope of discovery permitted on an expedited basis is a follows:

For discovery requests served by Oregon Tool on IronCraft, IronCraft shall provide responsive discovery concerning

> (1) communications and documents relating to Haefer and his employment and recruitment to IronCraft, whenever made;
>
> (2) communications and documents relating to any current or former Oregon Tool salespeople whose names appear on List B, created on or after April 1, 2023;
>
> (3) communications and documents relating to current or former Oregon Tool customers who appear on List A or List B, and who Oregon Tool specifically alleges that IronCraft has solicited business from on or after April 1, 2023, or that have ceased business with Oregon Tool on or after April 1, 2023, created on or after April 1, 2023;
>
> (4) communications or documents provided to IronCraft by any current or former Oregon Tool employee.

For discovery requests served by Oregon Tool on Haefer, Haefer shall provide responsive discovery concerning

> (1) any devices that Haefer possessed or used that contained information or documents pertaining to Oregon

ORDER - 16

    Tool, except that Haefer is not required to provide physical devices for imaging;

    (2) communications or documents within Haefer's possession relating to Oregon Tool, created or obtained on or after April 1, 2023;

    (3) communications or documents relating to List A or List B;

    (4) communications or documents relating to IronCraft, whenever made;

    (5) communications or documents that Haefer provided to IronCraft relating to Oregon Tool, whenever made.

For discovery requests served by IronCraft on Oregon Tool, Oregon Tool shall provide responsive discovery concerning

    (1) communications or documents relating to customers identified in Oregon Tool's discovery requests, created on or after May 1, 2023.

The parties are reminded of their ongoing duty to preserve evidence when litigation is pending or reasonably foreseeable. *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (9th Cir. 2011).

Accordingly, **IT IS ORDERED:**

1. Oregon Tool's Motion for Limited Expedited Discovery, **ECF No. 6**, is **GRANTED IN PART.** Oregon Tool's Emergency Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, **ECF No. 7**, is **GRANTED IN PART.**

ORDER - 17

2. Defendants are **RESTRAINED** from the distribution and/or use of any information in List A or List B for any purpose.

3. Haefer is **RESTRAINED** from disclosing List A or List B to IronCraft, any IronCraft employee, or any other person other than counsel.

4. IronCraft and Haefer are **ORDERED** to divest themselves of possession of List A or List B, except as necessary to preserve records for litigation.

5. If there are any disputes related to the scope of expedited discovery, the parties shall jointly contact the Courtroom Deputy by email, at Cora_Vargas@waed.uscourts.gov, to notify the Court of the dispute.

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide copies to counsel.

DATED August 23, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 18